```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

```
RALPH L. MARTIN, JR.,

                        Plaintiff,
          -vs-                            No. 1:15-CV-01067 (MAT)
                                          DECISION AND ORDER
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                        Defendant.
```
_____

**I.   Introduction**

Represented by counsel, Ralph L. Martin, Jr. ("plaintiff") brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, plaintiff's motion is  granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

**II.  Procedural History**

The record reveals that in June 2012, plaintiff (d/o/b October 15, 1970) applied for SSI, alleging disability as of June 23, 2011. After his application was denied, plaintiff requested a hearing, which was held before administrative law judge Timothy J.

Trost ("the ALJ") on April 29, 2014. The ALJ issued an unfavorable decision on August 11, 2014. The Appeals Council denied review of that decision and this timely action followed.

**III. Summary of the Evidence**

The medical record reveals that plaintiff sustained a left ankle fracture in June 2011, and subsequently developed problems secondary to a torn right meniscus. A March 19, 2012 MRI of plaintiff's left ankle revealed a healing fracture of the distal fibula, "[v]ery mild tendinopathy and mild tenosynovitis of the Achilles tendon," "[m]inimal edema adjacent to the plantar fascia suggesting very mild plantar fascitis," "[m]inimal edema adjacent to the lateral margin of the flexor diti minimi muscle," and "[s]mall joint effusion." T. 172. An MRI of plaintiff's right knee taken that same day revealed a "[t]ear of the posterior horn of the medial meniscus extending to the inferior articular surface," "[l]inear defects within the articular surface of the patella overlying the apex and medial patellar facet," "[m]ild thinning of the articular cartilage in the medial compartment," and "[s]mall joint effusion with a moderate-sized Baker's cyst." T. 174. Plaintiff attended physical therapy as needed throughout the relevant time period. On August 6, 2012, plaintiff's physician Dr. Christopher Ritter opined that plaintiff was totally and temporarily disabled.

Plaintiff underwent two consulting internal medical examinations at the request of the state agency. The first was performed by Dr. Honbiao Liu on August 31, 2012. On physical examination, Dr. Liu recorded that plaintiff had a normal gait but could not perform heel walking and performed toe walking "with mild difficulty"; squat was 40% of normal; and range of motion ("ROM") was limited in the right knee and left ankle. Dr. Liu opined that plaintiff had "mild limitation of standing, walking, climbing stairs, bending and kneeling." T. 181. The second consulting internal medicine exam was performed by Dr. Samuel Balderman on November 15, 2012. On physical examination plaintiff had a "limp favoring the right"; squat was 40% of normal; limited ROM of the left knee and ankle; and limited ROM of the right knee. Dr. Balderman opined that plaintiff had "[m]arked limitation in walking, kneeling, and climbing for three months to allow for recovery from recent knee surgery." T. 204.

The record contains mental health treatment notes from February through December 2013, from Shaun Crimmins, LMSW with Mid-Erie Counseling. LMSW Crimmins' treatment notes indicate that plaintiff was diagnosed with mood disorder, not otherwise specified ("NOS"), alcohol dependence, cannabis abuse, and nicotine dependence. Plaintiff had been referred for mental health and

substance abuse treatment[1] by the Buffalo COURTS (Court Outreach Unit: Referral and Treatment Services) program, in association with a domestic violence incident in which he "slapped a cigarette out of [his girlfriend's] hand." T. 289.

Although LMSW Crimmins' notes did not include results of formal mental status examinations ("MSE"), the notes occasionally noted that plaintiff had a depressed mood but denied suicidal ideation. On May 15, 2013, LMSW Crimmins noted that plaintiff was scheduled for an evaluation with psychiatrist Dr. Sanjay Gupta. On June 17, 2013, plaintiff had apparently been evaluated by Dr. Gupta as he had been prescribed medication for a mental health condition; he reported that he "continued medication compliance but felt that at times, his mind was slowed down." T. 296. LMSW Crimmins noted that she scheduled plaintiff for another appointment with Dr. Gupta. In July 2013, plaintiff again reported that he "experience[d] sedation due to medication," but felt that "his thoughts [had] slowed down and [become] more manageable." T. 297.

On September 23, 2013, LMSW Crimmins noted that he "reviewed [plaintiff's] recent psychotropic medication management appointment with Dr. Gupta and [plaintiff] noted that the medication continue[d] to assist with decreasing racing thoughts and helping him to sleep better." T. 299. On November 11, 2013, plaintiff

---

[1] The record reveals that plaintiff completed substance abuse treatment as ordered by the court on October 1, 2013.

reported that he was taking Zyprexa (an antipsychotic typically used for treatment of bipolar disorder and schizophrenia), which helped him sleep "but [did] not address racing thoughts during the day." T. 302. Plaintiff also noted that he had recently seen Dr. Gupta for treatment.

LMSW Crimmins and Dr. Gupta submitted three letters which are included in the administrative transcript. The first, dated December 24, 2013, indicated that plaintiff was "currently receiving psychiatric treatment" for medication management and counseling relating to a diagnosis of bipolar disorder mixed type. The letter stated that plaintiff "consistently attend[ed] clinic appointments including bi-monthly appointments with Dr. Gupta and appointments with Mr. Crimmins every six weeks." T. 209. According to the letter, plaintiff "continue[d] to work in treatment to stabilize his mood, to improve symptoms of sleep disturbance and to cope with his adjustment to a decreased physical ability level and being unable to work in his desired profession as well as the financial difficulty that has resulted from his injuries." Id. Two substantially similar letters were dated February 24, 2014 and April 28, 2014. The latter letter indicated that plaintiff had discontinued taking Zyprexa but was compliant with his new medication regimen prescribing Seroquel, another antipsychotic medication. All three letters gave a phone number for the ALJ to

5

call if any further information and/or medical records were required.

**IV. The ALJ's Decision**

At step one of the five-step sequential analysis, see 20 C.F.R. § 416.920, the ALJ determined that plaintiff had not engaged in substantial gainful activity since June 21, 2012, the application date. At step two, the ALJ found that plaintiff suffered from the following severe impairments: meniscus tear of the right knee, status post arthroscopic surgery, and left ankle fracture. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. In considering plaintiff's mental impairments, the ALJ found that plaintiff had no restrictions in activities of daily living ("ADLs"); mild difficulties in social functioning and maintaining concentration, persistence, or pace; and no prior episodes of decompensation.

Before proceeding to step four, the ALJ determined that plaintiff retained the RFC to perform the full range of sedentary work as defined in 20 C.F.R. § 416.967(a). At step four, the ALJ concluded that plaintiff could not perform any past relevant work. At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy which plaintiff could perform. Accordingly, he found that plaintiff was not disabled.

**V.    Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

**A.    Failure to Develop the Record**

Plaintiff contends that the ALJ failed to develop the record, especially considering that he was unrepresented at the hearing level. Specifically, plaintiff argues that the ALJ erred in failng to (1) develop a complete medical record; (2) obtain opinion evidence regarding plaintiff's mental limitations; and (3) advise plaintiff regarding the type of evidence necessary to develop the medical record. After a thorough review of the record and careful consideration of the applicable case law, the Court concludes that the ALJ failed to appropriately develop the record in this case.

**1.    Failure to Fully Develop the Medical Record as to Plaintiff's Mental Health Impairments**

Plaintiff contends that the ALJ failed to fully develop plaintiff's medical record, especially considering plaintiff's mental health diagnosis and *pro se* status at the hearing level. As plaintiff points out, "when the claimant is unrepresented, the ALJ

7

is under a heightened duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990) (internal quotation marks and citations omitted). The ALJ's duty to develop the record is also heightened where mental conditions are present. See, e.g., Corporan v. Comm'r of Soc. Sec., 2015 WL 321832, *2-3 (S.D.N.Y. Jan. 23, 2015) ("The law in this circuit and elsewhere points to the commonsense conclusion that, where a claimant is both unrepresented by counsel and obviously handicapped by a mental impairment, an ALJ bears a doubly heighted [*sic*] duty to develop the record. . . . That a claimant's mental illness may, in the same way, impede her from presenting her own case and necessitate greater assistance from the ALJ is evident.").

Here, the record clearly indicates that plaintiff was treated for mental health conditions not only by LMSW Crimmins, but also by psychiatrist Dr. Gupta. The letters submitted by Dr. Gupta and LMSW Crimmins indicate that plaintiff was seen on a consistent, bi-monthly basis by Dr. Gupta, who prescribed and managed plaintiff's antipsychotic medications. Yet, no treatment records from Dr. Gupta appear in the record. The Court agrees with plaintiff that this obvious gap in the record triggered the ALJ's heightened duty to fully develop plaintiff's medical record as it pertained to

plaintiff's mental health condition.[2] See, e.g., Villa v. Colvin, 2016 WL 1054757, *4-5 (W.D.N.Y. Mar. 17, 2016) (remanding for further consideration where medical record referenced treatment notes which were absent from the administrative transcript). Accordingly, this case is remanded for further development of the record. On remand, the ALJ is directed to obtain plaintiff's complete record of mental health treatment with Dr. Gupta.

### 2. Failure to Obtain Opinion Evidence Regarding Plaintiff's Mental Health Impairments

Plaintiff next contends that the ALJ failed to obtain a functional assessment, from an acceptable medical source, regarding plaintiff's work-related limitations stemming from his mental health conditions. The Court agrees. Although LMSW Crimmins and Dr. Gupta submitted three letters, none of those letters detail what functional limitations, if any, plaintiff suffered as a result of his bipolar disorder diagnosis. The ALJ noted that "Dr. Gupta never reported that [plaintiff] was unable to work and [did] not place[] any work related restriction on [plaintiff]," citing LMSW Crimmins' treatment notes for this proposition. T. 16. In effect, therefore, without seeking an opinion regarding plaintiff's mental

---

[2] The Court notes in the Commissioner's argument that the ALJ sent a letter addressed to Dr. Gupta seeking "copies of all records from the period February 1, 2013, to present"; however, the response was largely duplicative of the records previously provided. Considering the surrounding circumstances in this case, particularly Dr. Gupta's indication that he met with plaintiff on a bi-monthly basis and his continuous prescription of antipsychotic medication, the ALJ had a heightened duty to recognize that potentially significant treatments notes from Dr. Gupta were absent, and to make an effort to obtain those notes.

health limitations, the ALJ nevertheless held the absence of a medical opinion against plaintiff when arriving at his decision that plaintiff was not disabled.

Moreover, the ALJ failed to order even a consulting psychiatric examination nor a psychiatric review technique or mental RFC assessment from a state agency source. The ALJ's failure to do so constituted error in this case, because the record was not, as the Commissioner argues, otherwise "adequate for [the ALJ] to make a determination as to disability." Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996); see also Dailey v. Astrue, 2010 WL 4703599, *11 (W.D.N.Y. Oct. 26, 2010), report and recommendation adopted, 2010 WL 4703591 (W.D.N.Y. Nov. 19, 2010) ("[A]n ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence. Where the medical findings in the record merely diagnose [the] claimant's . . . impairments and do not relate these diagnoses to specific residual functional capabilities[,] . . . [the ALJ may not] make the connection himself.").

The regulations provide that although a claimant is generally responsible for providing evidence upon which to base an RFC assessment, before the Administration makes a disability determination, the ALJ is "responsible for developing [the claimant's ] complete medical history, *including arranging for a consultative examination(s) if necessary*, and making every

reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545 (emphasis added). As noted above, the duty to aid plaintiff in obtaining such reports from his own treating sources was heightened in this case because the plaintiff proceeded *pro se*. Accordingly, the ALJ should have sought out a functional opinion from Dr. Gupta, plaintiff's treating psychiatrist, or at the very least ordered a consulting psychiatric examination in order to obtain a qualified assessment of plaintiff's capabilities. On remand, the ALJ is directed to obtain a functional assessment of plaintiff's mental limitations from Dr. Gupta, and if such an assessment cannot be obtained, the ALJ is directed to order a consulting psychiatric examination.

### 3. Failure to Obtain Treating Source Opinion Regarding Physical Impairments

Finally, plaintiff contends that the ALJ failed in his duty to aid this *pro se* plaintiff in obtaining an opinion regarding his physical functional limitations, which evidence would be relevant to a closed period of disability secondary to plaintiff's ankle and knee impairments. The Court finds, however, that the ALJ's RFC finding as to plaintiff's physical impairments was supported by substantial evidence. The medical record regarding plaintiff's physical impairments appears complete. Additionally, the findings of the consulting internal medical examiners support the ALJ's restriction of plaintiff to sedentary work. See, e.g., Threatt v.

Colvin, 2016 WL 1103864, *4 (W.D.N.Y. Mar. 22, 2016) ("[T]he ALJ's failure to obtain a treating source opinion did not constitute error because the RFC finding was consistent with [the] consulting opinion, and with other substantial evidence which supported the ALJ's finding that plaintiff retained an RFC for sedentary work."). Accordingly, remand is not ordered on this basis.

**VII. Conclusion**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Doc. 12) is denied and plaintiff's motion (Doc. 9) is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. Of critical concern is that the ALJ give appropriate consideration of plaintiff's mental condition in arriving at his decision on remand. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                      **S/Michael A. Telesca**
                                      HON. MICHAEL A. TELESCA
                                      United States District Judge

Dated:    January 26, 2017
            Rochester, New York.